UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BRYAN KIMBLE, | ) |
|     Petitioner, | ) ) ) |
| v. | ) ) Case No. 4:23-cv-00470-SRC |
| UNITED STATES OF AMERICA, | ) ) ) |
|     Respondent. | ) ) |

**Memorandum and Order**

Petitioner Bryan Kimble asks the Court to vacate his sentence under 28 U.S.C. § 2255. Docs. 1, 2. He makes three arguments: that the Court unlawfully applied a career-offender enhancement to determine his sentencing-guidelines range, that he suffered from constitutionally ineffective assistance of counsel, and that his inability to cross-examine a confidential informant at trial constituted a violation of his Sixth-Amendment confrontation rights. Kimble has also filed a "Motion to Compel" asking the United States to provide certain documentation. Doc. 15. Having carefully reviewed the record, the Court holds that Kimble is not entitled to relief or an evidentiary hearing under § 2255, and denies his motion accordingly. The Court also denies Kimble's motion to compel as moot.

**I.      Statement of facts[1]**

After a jury found Kimble guilty on four counts, doc. 88, the Court held a sentencing hearing at which it overruled Kimble's objections, doc. 97, to the presentence report, *see* doc. 120, Sentencing Tr. 5:5–6:22; doc. 99. The PSR describes the following facts:

> 1.      On May 12, 2021, [Kimble] was found guilty by jury trial of four counts of a four-count Superseding Indictment. Counts 1, 2 and 3 charged Distribution of Cocaine Base, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(C);

---
[1] The "doc." cites in this section are from *United States v. Kimble*, 4:19-cr-01041-SRC-1.

and Count 4 charged Conspiracy to Possess with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841(b)(1)(C) and 21 U.S.C. § 846.

. . .

5.      According to investigative records from the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), on October 11, 16 and 22, 2019, Bryan Kimble knowingly and intentionally possessed with the intent to distribute a mixture or substance containing cocaine base within the Eastern District of Missouri. In addition, Kimble knowingly and willfully conspired with persons known and unknown to commit the above offenses within the Eastern District of Missouri.

6.      In October 2019, ATF received information from a confidential informant that Bryan Kimble was distributing heroin, fentanyl, cocaine base and marijuana in the Eastern District of Missouri. As a result of this information, law enforcement agents with ATF began to investigate the suspected drug activities of Kimble through audio and video recordings and controlled buys of narcotics.

Controlled Drug Buys

7.      On October 11, 2019, an ATF agent working in an undercover capacity (UCA) contacted Kimble through a series of phone calls to negotiate the sale of cocaine base. [Kimble] agreed to meet the UCA at 2152 Old Manor Road in St. Louis, Missouri. Once at the location, the UCA observed a vehicle with [Kimble] and Simashelaya Smith (unindicted) who was seated on the passenger's side of the vehicle. The UCA provided Smith with $250 in U.S. currency. Kimble handed Smith a plastic baggie containing 2.67 grams of cocaine base, who then handed it to the UCA. Later that day, Kimble called the UCA to tell him that he only received $230 and was short $20. The UCA agreed to give Kimble the $20 on the next drug transaction to make up for it.

8.      On October 16, 2019, the UCA contacted Kimble through a series of phone calls to negotiate the sale of approximately one-half ounce of cocaine base. [Kimble] agreed to meet the UCA at 3114 Franklin Avenue in St. Louis, Missouri. Kimble reminded the undercover agent that he was owed an additional $20 in U.S. currency from the previous purchase of cocaine base on October 11, 2019. [Kimble] arrived at the location with an unknown female (unindicted). Once at the location, the UCA gave the female subject $20 in U.S. currency, for the money that was reportedly shorted. The UCA then gave the female subject $1,150 in U.S. currency and the UCA was given a clear plastic bag containing 9.83 grams of cocaine base. After the transaction was completed, Kimble and the female subject drove away. The UCA called Kimble later to confirm that the amount of money provided was accurate. [Kimble] informed the UCA that all the money was there.

9. On October 21, 2019, the UCA began communicating with Kimble through several recorded text messages to negotiate the sale of cocaine base. On October 22, 2019, Kimble agreed to meet the UCA at a Walgreens located at 1225 Union Boulevard in St. Louis, Missouri to purchase approximately 20 grams of cocaine base. Once at the location, Kimble called the UCA and instructed him to go to an alleyway between Granville Place and Belt Avenue. Once at the new location, the UCA observed another unknown female subject (unindicted) inside [Kimble]'s vehicle. The female subject exited the vehicle and the UCA gave her $1,850 in U.S. currency. The female subject gave the UCA a plastic bag containing 18.57 grams of cocaine base. After the transaction was completed, Kimble and the female subject drove away.

10. On October 31, 2019, the UCA called Kimble to negotiate the sale of cocaine base. The UCA negotiated the sale of one ounce of cocaine base for $2,500 in U.S. currency. Kimble agreed to meet the UCA at 4134 St. Louis Avenue in St. Louis, Missouri to sell him the cocaine base. Once at the location, the UCA observed an unknown male subject (unindicted) in the gangway. The male subject entered the UCA's vehicle and the UCA gave him $2,500 in U.S. currency. The UCA observed Kimble standing near the front of the gangway talking on a cell phone. The male subject gave the UCA a plastic bag containing the suspected cocaine base. An analysis of the contents did not reveal the presence of a controlled substance.

11. The narcotics sold to the UCA by Kimble were analyzed by the St. Louis, Missouri Metropolitan Police Department (SLMPD) laboratory found to be 31.07 grams of cocaine base.

Doc. 99 at ¶¶ 1–11. Having presided over the trial, the Court finds the facts stated in the PSR reflect the evidence adduced at trial. And at sentencing, the Court adopted the PSR as its findings of fact and conclusions of law regarding the advisory guidelines. Doc. 120, Sentencing Tr. 11:18–19.

## II.  Procedural history

### A.  Criminal proceedings[2]

In December 2019, a federal grand jury returned a three-count indictment against Kimble, charging him with three counts of knowingly and intentionally distributing a mixture or substance containing a detectible amount of cocaine base (crack), a Schedule II controlled

---

[2] The "doc." cites in this section are from *United States v. Kimble*, 4:19-cr-01041-SRC-1.

substance, in violation of 21 U.S.C. § 841(a)(1).  Docs. 1–2.  In April 2021, a federal grand jury returned a superseding four-count indictment against Kimble, repeating each of the original three counts but specifying that each also violated 18 U.S.C. § 2, and adding a fourth count for knowingly conspiring, confederating and agreeing together with others to knowingly and intentionally possessing with the intent to distribute a mixture or substance containing a detectable amount of cocaine base (crack), a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846.  Docs. 48–49.  Kimble pleaded not guilty, *see* docs. 18, 78, and after a three-day jury trial, *see* docs. 78–79, 82, the jury found him guilty on all counts, doc. 88.

The United States Probation Officer then prepared the PSR, calculating Kimble's total offense level as 32 and his criminal history category as VI.  Doc. 99 at ¶¶ 27, 42.  The probation officer determined, based upon Kimble's criminal history, that he qualified as a career offender for sentencing purposes, resulting in a guidelines range of 210 to 262 months.  *Id.* at ¶¶ 25, 42.  *See id.* at ¶ 71.

In October 2021, the Court held a sentencing hearing at which it sentenced Kimble to a within-the-guidelines-range sentence of 255 months, followed by a three-year term of supervised release.  *See* docs. 106–07.  Before imposing its sentence, the Court confirmed that Kimble was fully satisfied with the services rendered him by defense counsel throughout the criminal proceedings in this case:

> **THE COURT:** [Y]ou were represented by [defense counsel Jason] Hine throughout this case; correct?
>
> **[KIMBLE:]** Yes.
>
> **THE COURT:** And are you fully satisfied with the representation Mr. Hine has provided to you in this case?
>
> **[KIMBLE]:** Yes.

Doc. 120, Sentencing Tr. 4:8–13.

After sentencing, Kimble appealed, challenging three evidentiary rulings the Court made during his trial.  *See* doc. 123.  The Eighth Circuit affirmed, *see id.*, doc. 124, and Kimble is currently serving his sentence at USP Leavenworth in Kansas with a projected release date of February 28, 2038.[3]

### B.     Civil proceedings

In April 2023, Kimble timely filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255.  Docs. 1, 2.  He makes three arguments:  first, that the Court unlawfully applied the career-offender enhancement when calculating his guidelines sentencing range; second, that defense counsel was constitutionally ineffective for failure to "request a mistrial" on grounds that he suffered prejudice by prosecutors' occasional use of the term "mug shot" at trial; and third, that his inability to cross-examine a confidential government informant constituted a violation of his Sixth-Amendment rights.  *Id.*  After the United States filed its response, doc. 8, Kimble thrice moved for an extension of time in which to file his reply, *see* docs. 9, 11, 17.

The Court promptly granted the first, doc. 10, but in Kimble's second motion, he claimed that he needed more time because he was "on lockdown almost every day" in prison, doc. 11, so the Court ordered the United States to respond with "information on whether USP Leavenworth is and has been on 'lockdown' as Kimble asserts," doc. 12.  The United States explained that it "contacted USP Leavenworth regarding [Kimble]'s claims, and [was] informed that USP Leavenworth, in the unit where [Kimble was] housed, was on lockdown" for some of the relevant period.  Doc. 13.  Accordingly, the Court granted Kimble's second motion for an extension of time.  Doc. 14.  Shortly thereafter, Kimble filed a "Motion to Compel Production,"

---

[3] Find an inmate, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited June 5, 2024).

explaining that he had "received nothing from the Government concerning their investigation into [his] lockdown allegations," arguing that "[t]he Federal Rules require that any communication from the Government to the Court be served on the Defendant," and asking that the Court "order the Government to furnish him with all records the Government obtained concerning the lockdown claims." Doc. 15. Shortly thereafter, Kimble filed his third motion for an extension of time, doc. 17, which the Court granted, ordering his reply due no later than March 1, 2024, doc. 20.

The United States did not respond to Kimble's motion to compel, and the motion remains pending. Further, Kimble never filed his reply nor sought another extension of time in which to do so, rendering his § 2255 petition ripe for the Court's review.

### III. Standard of review

Under section 2255, a federal prisoner "may move the court which imposed [his] sentence to vacate, set aside or correct the sentence" on the grounds that the court imposed "the sentence . . . in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). If a petitioner claims his sentence violates the Constitution or laws of the United States, the petitioner must establish that the violation constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Gomez*, 326 F.3d 971, 974 (8th Cir. 2003) (first quoting *United States v. Boone*, 869 F.2d 1089, 1091 n.4 (8th Cir. 1989); and then citing Fed. R. Crim. P. 32(d) advisory committee notes to the 1983 amendments). Generally, to obtain section 2255 relief based on a claim, a petitioner must have raised the underlying error on direct appeal. *See Roundtree v. United States*, 885 F.3d 1095, 1097 (8th Cir. 2018). If a petitioner

failed to do so, the Court considers the claim procedurally defaulted, rendering it ineffective in establishing a right to section 2255 relief. *See id.*

Three exceptions to this general rule exist. First, "if the error is jurisdictional, the error may be raised on collateral review without being subjected to procedural default analysis." *United States v. Mooring*, 287 F.3d 725, 727 (8th Cir. 2002). Second, if a petitioner raises a constitutional claim, the Court does not consider the claim procedurally defaulted if the petitioner shows cause for the default and actual prejudice. *See Anderson v. United States*, 25 F.3d 704, 706 (8th Cir. 1994); *Reid v. United States*, 976 F.2d 446, 448 (8th Cir. 1992). This "cause and prejudice exception does not apply to nonconstitutional or nonjurisdictional claims that could have been but were not raised on direct appeal." *Anderson*, 25 F.3d at 706 (first citing *Brennan v. United States*, 867 F.2d 111, 120 (2d Cir. 1989); and then citing *Bontkowski v. United States*, 850 F.2d 306, 313 (7th Cir. 1988)). Finally, the Court "will consider a claimed error that could have been raised at trial or on direct appeal if the alleged error was a fundamental miscarriage of justice." *Id.* (citing *Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993) (per curiam)). This exception, however, "applies only when a petitioner shows by clear and convincing evidence that, but for an alleged constitutional error, no reasonable juror would have found the petitioner guilty," *id.* at 706–07 (citing *Wallace v. Lockhart*, 12 F.3d 823, 827 (8th Cir. 1994)), and extends only to claims of factual innocence, *id.* at 707 (first citing *Narcisse v. Dahm*, 9 F.3d 38, 40 (8th Cir. 1993); and then citing *Ramey*, 8 F.3d at 1314).

If the petitioner's claims are not procedurally barred, the Court must hold an evidentiary hearing to consider the claims "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir. 1994). A petitioner is entitled to an evidentiary

7

hearing "when the facts alleged, if true, would entitle [the petitioner] to relief." *Payne v. United States*, 78 F.3d 343, 347 (8th Cir. 1996) (quoting *Wade v. Armontrout*, 798 F.2d 304, 306 (8th Cir. 1986)). However, a court may dismiss a claim without a hearing "if the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Shaw*, 24 F.3d at 1043 (citing *Larson v. United States*, 905 F.2d 218, 220–21 (8th Cir. 1990)).

## IV.   Discussion

Kimble's § 2255 petition makes three distinct arguments. *See* docs. 1–2. The Court addresses each in turn.

### A.   Career-offender enhancement

In determining the total offense level that would yield Kimble's sentencing guidelines range, the Court "adopt[ed] the PSR as [the] findings of fact and conclusions of law regarding the advisory guidelines." *United States v. Kimble*, 4:19-cr-01041-SRC-1, doc. 120, Sentencing Tr. 11:8–19. The PSR, in turn, calculated Kimble's total offense level as 32, based in part on his status as a career offender. Doc. 99 at ¶ 25. A career offender is one who "has previously been convicted of two or more prior felonies, each of which is . . . a crime of violence[]" or a certain controlled substance offense. *See* 28 U.S.C. 994(h); *see also* U.S.S.G. § 4B1.1(a) (implementing the terms of that statute and providing that "[a] defendant is a career offender if [*inter alia*] the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense."). A "crime of violence," in turn, refers to

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property may be used in the course of committing the offense.

18 U.S.C. § 16; *see also* U.S.S.G. § 4B1.2(a) (defining a "crime of violence" in similar terms).

8

Now, Kimble argues that "his sentence is unlawful because the prior offense [of] which he was convicted . . . no longer qualifies as a crime of violence because it relied on the residual clause which has been struck down as unconstitutionally vague." Doc. 2 at 3–4.[4] This argument suffers from two flaws.  First, Kimble has procedurally defaulted the claim:  a petitioner "cannot raise a nonconstitutional or nonjurisdictional issue in a § 2255 motion if the issue could have been raised on direct appeal but was not," *Anderson*, 25 F.3d at 706, and Kimble simply did not make this nonconstitutional and nonjurisdictional point on appeal, *see* docs. 110, 123; Brief for Appellant, *United States v. Kimble*, 54 F.4th 538 (8th Cir. 2022) (No. 21-3327).  Second, Kimble does not identify the "residual clause" he challenges, nor does he point to any part of the Court's judgment or sentence that relies on a residual clause of any kind.  He cites to *Johnson v. United States*, 576 U.S. 591 (2015), to support his argument, but that case is not relevant to Kimble's case.  In *Johnson*, the Supreme Court held unconstitutional the residual clause in an outdated definition of a violent felony—namely:  "any crime punishable by imprisonment for a term exceeding one year . . . that . . . is burglary, arson, or extortion, involved the use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*." *See id.* at 593–94, 606 (citation omitted) (emphasis in original).   At sentencing, the Court did not rely on the unconstitutional portions of the statute, and Kimble does not point to anything in the record suggesting that the Court did so.  Accordingly, Kimble's petition for relief on these grounds fails.

### B. Ineffective assistance of counsel

Second, Kimble insists that he suffered constitutionally ineffective assistance of counsel because defense counsel "fail[ed] to request a mistrial on the basis of improper statements"—

---

[4] The Court cites to page numbers as assigned by CM/ECF.

9

namely, the use of the phrase "mug shot" at trial "as a tactic to inflame the passions or prejudices of the jury."  Doc. 2 at 4.  He also argues that defense counsel's failure to object to the United States' use at trial of such terms as "booking photo," "criminal history," and "traffic citations" constitutes ineffective assistance of counsel.  *Id.* at 6.  But to demonstrate ineffective assistance, Kimble must show both that counsel's conduct fell outside "the wide range of reasonable professional assistance" and that Kimble suffered actual prejudice.  *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)).  And neither of Kimble's proffered critiques of defense counsel rise to meet that stringent standard.  First, the phrase "mug shot" appeared only three times before the jury:  twice in the United States' opening statement, *see* doc. 117, Jury Tr. 151:6, 151:24, and once in the testimony of one of the United States' witnesses, *see* doc. 118, Jury Tr. 146:25.  After the first two instances, defense counsel requested, outside the presence of the jury, that the United States and its witnesses not use the term; the United States agreed.  *See* doc. 117, Jury Tr. 209:18–211:15.  Second, and in any event, Jury Instruction No. 10—which defense counsel suggested, *see id.* at 211:2–15—specifically addressed this issue by stressing to the jury that "[t]he fact that the police had the defendant's picture does not mean that he committed this or any other crime, and it must not affect on your consideration of this case." *United States v. Kimble*, 4:19-cr-01041-SRC-1, doc. 85 at 12; doc. 119, Jury Tr. 15:3–10.

      That sequence of events, including defense counsel's effort to cure any possible prejudice resulting from the use of the terms raised in Kimble's petition, does not overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Rice*, 449 F.3d at 897 (quoting *Strickland*, 466 U.S. at 689).  And in the alternative, Kimble has not demonstrated actual prejudice—that is, "a reasonable probability that, but for

10

counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  Accordingly, Kimble's petition for relief on these grounds fail.

      C.     **Confrontation of the confidential informant**

Third, Kimble claims that he "was deprived of the opportunity to probe into the credibility" of a confidential government informant because the informant "was not available for the defense to cross[-]examine during trial," "therefore hindering the defense" and preventing him from "highlight[ing] any relevant inconsistencies which would [a]ffect the outcome of the jury verdict." Doc. 2 at 7.  "[T]he foundation of the government's case," he argues, "is based off information furnished by the confidential informant in question." *Id.*  That inability to cross-examine, Kimble concludes, constitutes a violation of his confrontation rights.  *See id.*; U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him").  But "constitutional or jurisdictional claims not raised on direct appeal cannot be raised in a § 2255 motion unless the movant can establish '(1) cause for the default and actual prejudice or (2) actual innocence.'" *Tripp v. United States*, No. 1:11-cv-00118-ERW, 2012 WL 27930, at *2 (E.D. Mo. Jan. 5, 2012) (quoting *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001)).  And here, Kimble did not raise this issue on appeal. *See* docs. 110, 123; Brief for Appellant, *United States v. Kimble*, 54 F.4th 538 (8th Cir. 2022) (No. 21-3327).  Accordingly, he cannot raise the point without establishing (1) cause and prejudice or (2) actual innocence.  *See Tripp*, 2012 WL 27930, at *2 (quoting *Moss*, 252 F.3d at 1001). And his brief discussion of this issue establishes neither:  he makes no mention of the default or prejudice, much less shows cause for the failure to raise the confrontation issue on appeal; and he makes no claims of actual innocence.  *See* docs. 1–2.  Accordingly, he has defaulted this claim.

11

\* \* \*

Having thoroughly reviewed the record, the Court finds that each of Kimble's claims to relief fail. Accordingly, the Court denies Kimble's petition for relief.

**V.     Certificate of appealability**

For the Court to issue a certificate of appealability, Kimble must make a substantial showing that he suffered the denial of a constitutional right. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). A substantial showing is one indicating that reasonable jurists could debate the issues, a court could resolve the issues differently, or the issues deserve further proceedings. *Id.* But as described in the discussion above, Kimble has not made such a showing. Accordingly, the Court declines to issue a certificate of appealability in this case.

**VI.    Conclusion**

The Court finds that the record conclusively establishes that Kimble is not entitled to relief. Accordingly, the Court denies Kimble's Motion to Vacate, Set Aside, or Correct Sentence. *See* docs. 1–2. The Court also denies Kimble's pending Motion to Compel as moot. *See* doc. 15. A separate order of dismissal accompanies this memorandum and order.

So ordered this 5th day of June 2024.

*[signature: SL R. CQ]*

STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE